The appeal is from a judgment on a life insurance policy issued by appellant to appellee's deceased husband, James S. Thornton, in which appellee was named as beneficiary. The answer of appellant in the court below specially pleaded a provision of the policy to the effect that if, within two years from the date thereof, the insured should die by his own act, whether sane or insane, the liability on the policy should be limited to the premiums actually paid by him. The only issue of fact in the trial court was whether or not the deceased, James S. Thornton, committed suicide. Only one issue was submitted to the jury by the trial court, which was as follows: "Did J. S. Thornton voluntarily take his own life?" The answer of the jury was, "No."
A requested peremptory instruction by the appellant was refused. No objections or exceptions to the court's charge are contained in the record, except an exception to the failure to give the peremptory instruction. Three assignments are brought to this court. The first complains of the ruling of the trial court in refusing the peremptory instruction; the second presents that the verdict of the jury is contrary to and unsupported by the evidence; and the third presents a question of the admissibility of evidence.
Briefly the facts supporting appellant's theory of suicide are: The policy was issued November 2, 1927, and the deceased died on January 28, 1928. The deceased was employed as a clerk in a grocery store. On Saturday morning, January 28, deceased left the store to go home, reporting that he was sick. Some 45 minutes thereafter he was discovered dead lying on his right side with his back against the walls of the Abilene high school building. About 4 feet from his body there was found an empty bottle bearing no label of any kind. The bottle smelled like carbolic acid. Dr. Scott Hollis, the city health officer, was the first physician to view the deceased. He came to the place where his body was found before it was removed. His testimony, in effect, was that he examined the mouth of deceased by raising his lips and saw that his mouth was burned on the inside. He gave it as his opinion from his examination that death was caused by carbolic acid poisoning.
Dr. C. E. Adams, another physician, made an examination of the deceased after the body had been removed to the undertaker's place. He testified that he found, upon examination, that, as far down as he could see in the deceased's throat, it was charred a brownish color; that the condition which he found in the mouth and throat was characteristic of carbolic acid. He likewise gave it as his opinion that the cause of the death was carbolic acid poisoning. This doctor performed an autopsy, removing the stomach of the deceased and delivering it to a chemist. The scent of carbolic acid was present when the stomach was opened.
W. E. Whiteley, the chemist to whom the stomach was delivered, testified that he found a strong indication of carbolic acid being present in the stomach; that one could get a pretty good idea that it was carbolic acid from smelling it. He testified that he knew from the chemical analysis that it was carbolic acid. He also made an examination to determine the presence of formaldehyde in the stomach, and testified that there was none present. No examinations for other poisons than carbolic acid and formaldehyde were made.
The place at which the deceased's body was found was not visible from the streets running by the high school building. There was a kind of court on the south side of the *Page 354 
building not visible from the streets, which were on the north and east side thereof, and the body was found in this open place or court. These facts, standing alone, make out a very strong case of suicide, but, in passing upon the questions presented to this court by the first and second assignments, we must view the case from the standpoint of the appellee, in whose favor judgment was rendered below, and give to her testimony full credence and all of the weight to which it is entitled, irrespective of any testimony to the contrary.
The facts testified to by appellee's witnesses tending to rebut the issue of suicide were, briefly: Deceased was about middle-aged. He had a family consisting of a wife and two daughters. He was a hard-working man; had a jovial disposition; had no financial troubles; had no family troubles. He and his family were happily situated. He had regular employment as a clerk in a grocery store, and was making a living for himself and family. He was not in bad health, with the exception of pyorrhea, a disease of the gums. In short, there is not a suggestion in the record of any possible motive why this man should want to destroy himself. The facts further disclose that on the evening of January 27th he took home with him some chili. This was a kind of chili that had been cooked and molded into the form of a brick. His wife prepared this chili for supper, and he ate some of it. During the night he became sick and suffered with severe pains and cramping in his stomach. His wife administered to him at least twice during the night, giving him soda water. Early the next morning his wife served his breakfast. The breakfast seems to have consisted of coffee and bran. The bran was served with sweet milk taken from a bottle. After taking two or three teaspoonsful of the bran the deceased complained that it burned his throat, and, after talking two or three more spoonsful of it, he repeated the complaint. The deceased had a blister in his mouth which had been there for several days. For more than a year he had been using a mouth wash containing carbolic acid in an effort to combat the pyorrhea. The facts further show that one of his daughters who drank milk out of the same bottle as that from which the deceased drank became very sick on the morning of the death of the deceased and a doctor was called to administer to her. So great was her pain and suffering that a hypodermic was required to relieve her. Formaldehyde was found in this milk. There was testimony by Dr. Snow that formaldehyde in the human intestines chars the mucous membranes and causes a swelling of the mucous membranes of the upper part of the intestines and extending on up to and including the mouth. It would cause a discoloration of the membranes, leaving a red condition, and, if sufficiently strong, would present a kind of burnt appearance. The facts further disclose that the deceased came to his work on the morning of his death, and that he was complaining of cramping in the stomach; that he appeared to be a very sick man. He finally told his employer that he was unable to work any longer, and left for his home with the understanding that, if he got better, he would come back, as it was a busy day and his services were greatly needed. The high school building is situated between the store at which deceased worked and the house at which he resided. School was not being conducted on that day.
The rules for our guidance in deciding the question thus presented to us are so well established by the authorities hereinafter cited that a discussion thereof would be but a mere repetition. We think it sufficient to state that the evidence as a whole, viewed in the light most favorable to the appellee, when aided by the presumption of law that the deceased did not voluntarily destroy his own life, was sufficient to present a jury question. We cannot say there is not some room for reasonable minds to differ as to whether the deceased committed suicide, and, since the jury has determined that he did not, and the trial judge has overruled the motion for rehearing, we do not think it would be within our proper province to set aside the verdict of the jury and the judgment rendered thereon. Fort Worth Mutual Benevolent Ass'n v. Jennings (Tex.Civ.App.)283 S.W. 910; Mutual Life Ins. Co. v. Ford, 61 Tex. Civ. App. 412,130 S.W. 769; Sovereign Camp, W. O. W., v. McCulloch (Tex.Civ.App.)192 S.W. 1154; Grand Fraternity v. Green, 62 Tex. Civ. App. 366,131 S.W. 442; Equitable Life Assur. Soc. v. Liddell, 32 Tex. Civ. App. 252,74 S.W. 87; Sovereign Camp, W. O. W., v. Valentine, 173 Ky. 182,190 S.W. 712.
Where, as here, all of the evidence of suicide is circumstantial, with no suggestion of any motive therefor, and there is other evidence in the record, even though slight, tending to establish a different hypothesis, a jury question is presented. Appellant has had its day in court on this question, and we are not authorized to disturb the findings of the jury.
The third assignment of error presents for review the ruling of the trial court on the admissibility of testimony. The bill of exceptions preserving this point is as follows: "Be it remembered on the trial of the above entitled and numbered cause the plaintiff offered as a witness, E. W. Curtiss and after showing that he was in the insurance business and was District Manager for the defendant at Abilene, Texas, at the time that James S. Thornton took out the policy of insurance sued on, offered to prove by the said Curtiss `when he took his application for the insurance he had to insist and it was after considerable insistence that Thornton did take it. He insisted that he take it just as he insisted with any other man. Thornton did *Page 355 
not feel like he was able to buy and pay for the insurance, but he insisted on his buying some amount and he did finally take $2,000.00.' When said testimony was offered the defendant excepted to the admission of the same on the ground that the testimony did not tend to prove any issue in the case and was irrelevant and immaterial and would probably have the effect of prejudicing the minds of the jury against the defendant, but the court overruled the objection of the defendant and permitted the witness to testify to the above facts, and the witness did so testify over the objection of this defendant, to which action and ruling of the court in so permitting the above testimony in the record the defendant duly excepted in open court as above stated and here now tenders its bill of exception and asks that the same be allowed, approved and filed, which is accordingly done. With the qualification that the policy is dated November 2, 1927, and the insured died Jan. 28, 1928."
This, to us, is the most difficult question presented. A similar question was before this court in the case of Hugh Jennings et al. v. Sovereign Camp, W. O. W. (Tex.Civ.App.) 296 S.W. 961, 962. In that case, as here, the defense was suicide. The defendant made proof that the deceased had received an insurance policy, not the one sued on, through the mail about an hour before his death, and the plaintiff in rebuttal offered proof that it required some persuasion on the part of an agent of the insurance company which wrote that policy to induce the deceased to take it, and also offered to prove that the deceased had permitted one or two other policies to lapse a short time prior to his death. It was held by this court, in an opinion by Scott W. Key, Special Chief Justice, that the court erred in refusing to permit the proffered testimony. The language of the opinion disposing of that question is as follows: "Also we sustain appellants' assignments of error relating to the exclusion of certain rebuttal testimony offered by appellants. The appellee proved that the deceased had received a life insurance policy through the mails about an hour before his death; this evidence would be permissible as a circumstance tending to establish suicide, as it is reasonable to believe that a man, no matter what the motive impelling the rash act, would be more liable to take his own life knowing that his family will be benefited to some extent by life insurance left by him. In rebuttal to this, appellants offered to prove that it required some persuasion on the part of an agent to get the deceased to take the very policy that was delivered on the morning of the death, and undertook to prove that the deceased had one or two other policies that had recently lapsed. The court erred in refusing to permit the proffered testimony, especially as the record is totally lacking in any motive or reason for deceased taking his own life."
That is substantially the question presented here. Necessarily great latitude must be indulged in admitting evidence on a question of suicide when only circumstantial evidence is available. The facts in evidence showed that within less than three months after the policy had been delivered to the deceased he had died under circumstances disclosed in the evidence. Doubtless one of the purposes of insurance companies in inserting the provision with reference to suicide within a specified time is to guard against the perpetration of fraud by those designing to commit suicide and procuring policies with that in view. We think that unquestionably appellant would have been permitted to prove, had the facts existed, that the policy was issued upon the solicitation of the deceased. The circumstance of death shortly after taking the policy was necessarily injected into the evidence and had a tendency to indicate suicide, and we have concluded that the trial court did not err in permitting the appellee to show the true facts with reference to that circumstance to rebut whatever inference might be drawn therefrom.
Finding no reversible error in the record, it is ordered that the judgment of the trial court be affirmed.