**BURCHFIELD et al. v. TANNER.**

No. 11358.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 12, 1943.

Rehearing Denied Dec. 8, 1943.

H. L. Faulk, of Brownsville, Carter & Stiernberg, of Harlingen, and A. H. Moore, of La Feria, for appellants.

Seabury, Taylor & Wagner, of Brownsville, for appellee.

NORVELL, Justice.

L. M. Burchfield, R. H. McMinn and J. E. Robinson, co-partners operating the Service Gin Company of La Feria, Texas, have appealed from a judgment for $3,014.67, in favor of K. L. Tanner, which was based upon twenty-one special issues answered by a jury.

The jury found (1) that before purchasing approximately sixty bushels of cottonseed of the Del Fos variety in the early part of March, 1942, Tanner, the appellee, advised McMinn, one of appellants (who was acting for the partnership) that he was purchasing said seed for immediate planting purposes; (2) that appellants sold appellee sixty bushels of Del Fos seed for immediate planting purposes; (3) that appellee believed said seed to be suitable for planting purposes; (4) that appellee believed said deed to be suitable at the time he planted it; (5) that, however, said seed were not reasonably sound and suitable for planting purposes; (6) that appellee purchased forty-two bushels of Del Fos cotton seed from the Quality Gin Company; (7 and 8) that appellee picked 32,452 pounds of cotton seed and 16,029 pounds of lint cotton from approximately 80 acres of land which he had in Cameron County; (9) that the market value of said lint cotton was $0.166 per pound; (10) that the reasonable average cost to appellee for picking the seed cotton was $1.75 per 100 pounds; (11) that had the cotton seed purchased by appellee from appellants been sound and suitable for planting purposes, appellee would have grown 30,000 pounds of lint cotton on said eighty-acre tract, and (12) 90,000 pounds of cotton seed; (13) that the average value of lint cotton in Cameron County, such as would have been raised by appellee had the seed been suitable was $0.18 per pound, (14) while the average value per ton of such cotton seed would have been $44 per ton; (15) that the cost of picking such seed cotton would have been $1.25 per hundred pounds; (16) that the reasonable cost to appellee for replanting his eighty acres because of a poor stand was $192.50; (17, 18, 19 and 20) that appellee incurred an additional expense of $92.50 in hoeing, cultivating and dusting costs because of the poor stand resulting from the use of unsatisfactory seed; and (21) that each sack of seed sold by appellants to appellee did not have attached thereto a tag provided by the Commissioner of Agriculture, giving the name and address of the person who labeled the seed, the kind of seed, a statement where the seed was grown, the percentage of germination and lot identification or lot number, per cent of weed seed and the name and approximate number of secondary noxious weed seed, other seed crops and percentage of inert matter.

After the jury had been discharged, appellee filed a remittitur of 30,000 pounds of cotton seed, or the value thereof, and presented to the court an affidavit signed by all twelve of the jurymen to the effect that the answer of 90,000 pounds made by them to Special Issue No. 12 was a unanimous clerical mistake and that an answer of 60,000 pounds was actually agreed upon. It was agreed between the parties that all of the jurymen would testify in open court in the manner set forth in the affidavit signed by them. The court accepted the remittitur and entered judgment as if the jury had answered 60,000 pounds in answer to Special Issue No. 12, instead of 90,000 pounds. The judgment is based upon a calculation set out therein.

Tanner was credited with 60,000 pounds of cotton seed at $44 per ton; 30,000 pounds of lint cotton at 18 cents a pound, and certain expense items necessitated by a replanting of his field. Offset against these items were the cost (as found by the jury) of picking 90,000 pounds of seed cotton and the ginning of the same as well as the value of the lint cotton and cotton seed actually raised by him. The settling of the various items involved left a balance in favor of Tanner of $3,014.67.

Appellants present four points.

By their first point appellants insist as a matter of fundamental error that there is a fatal variance between the pleadings and the issues submitted to the jury in that the pleadings declare upon an express warranty while the issues were submitted upon the theory of implied warranty. We overrule this point. We believe the petition sufficiently sets forth a claim of liability upon the theory of an implied warranty. Further, the record does not disclose that appellants objected to the submission of issues because of a deficiency in pleading, and the point is therefor waived under the provisions of Rule 274, Texas R.C.P.

By their second point appellants assert that the jury's answer to Special Issue No. 5 is contrary to the overwhelming preponderance of the evidence and is

not supported by the evidence. In determining the sufficiency of the evidence, "we must view the case from the standpoint of the appellee, in whose favor judgment was rendered below, and give to [his] testimony full credence and all the weight to which it is entitled, irrespective of any testimony to the contrary." Federal Life Ins. Co. v. Thornton, Tex.Civ.App., 21 S. W.2d 352, 354. We hold that the evidence is sufficient to support the jury's finding that the seed purchased from appellants was not reasonably sound and suitable for planting purposes. We likewise hold that the finding is not against such an overwhelming preponderance of the evidence as would authorize our setting the same aside. Nickel v. Nickel, Tex.Civ.App., 130 S.W.2d 1085; 3 Tex.Jur. 1097, § 769.

█ By their fourth point appellants assert that there is an irreconcilable conflict between the jury's answers to Special Issues Nos. 11 (30,000 pounds of lint cotton) and 12 (90,000 pounds of cotton seed) in that "when applied to the pleadings the answer to Special Issue No. 11 is to the effect that the (appellee) would have produced 60 bales of cotton, while in answer to Special Issue No. 12, when applied to the pleadings, (is a) finding that appellee would have produced 90 bales of cotton." Appellee pleaded that had the cotton seed purchased of appellants been sound and suitable for planting purposes he would have raised between 70 and 80 bales (of an average of 500 lbs.) of lint cotton upon his eighty-acre tract of land, and that the seed would have averaged 1,000 lbs. to the bale. The undisputed testimony in the record is that the ratio of cotton seed to lint cotton is 800 to 1,000 pounds of cotton seed to 500 pounds of lint cotton. The conflict is readily apparent. The finding of 90,000 pounds of cotton seed indicates at least 90 bales or 45,000 pounds of lint cotton. The finding of 30,000 pounds of lint cotton indicates from 48,000 to 60,000 pounds of cotton seed. However, the action of the trial court in either disregarding or allowing a correction of the jury's answer to Special Issue No. 12, obviously removed this conflict.

This brings us to a consideration of appellants' third point, wherein they recognize the trial court's power to consider a unanimous mistake of a jury to the extent of refusing to enter judgment thereon but assert that under authority of Caylat v. Houston E. & W. T. R. Co., 113 Tex. 131, 252 S.W. 478, the trial court was unauthorized to enter a judgment against them. The Caylat case sets forth the law of this State which is applicable to unanimous mistakes of juries except as it may be modified as to the use of jurors' affidavits by the case of Commercial Standard Ins. Co. v. Miller, Tex.Com.App., 48 S.W.2d 618. That point is not involved here in view of the stipulation that all of the jurors would have testified to the facts as set forth in their affidavits. We shall not quote from the Caylat case, Rule 452, R. C.P., but hold that the undisputed evidence shows that a unanimous mistake of the jury occurred, but that the trial court was without authority to correct the verdict and substitute "60,000 pounds" as the answer to the issue in lieu of "90,000 pounds."

█ From this holding, however, a remand of the case for new trial does not necessarily follow. The effect of the finding or holding that the answer to Special Issue No. 12 was the result of a unanimous mistake makes that issue unavailable for the basis of a judgment. But this issue is pertinent only to the amount of damages which should be awarded to the appellee. It is not a "liability issue," that is, it has nothing to do with the question of whether or not appellants are liable to appellee in some amount. The trial court allowed a remittitur and in our opinion the principles of remittitur are applicable to the situation. The fact that the amount of damages to be awarded depend upon the answers to several special issues submitted rather than upon one issue calling for a certain amount of money can make no difference in the legal situation involved. Houston Belt & Terminal R. Co. v. Lynch, Tex.Com.App., 221 S.W. 959; 3 Tex.Jur. 1174. In Texas Employers' Ins. Ass'n v. Lightfoot, 139 Tex. 304, 162 S.W.2d 929, 931, the Supreme Court entered judgment upon a remittitur where the only error committed in the trial court related to the computation of the wage rate in a workmen's compensation case, and the respondent, Lightfoot, agreed by remittitur to accept an award based upon the statutory minimum.

It therefore seems to us that if a judgment can be entered upon the remaining findings of the jury after wholly disregarding the jury's answer to Special Issue No. 12, upon a further remittitur, then it is the

duty of this court to suggest such remittitur rather than to peremptorily remand the case. Rule 439, R.C.P.

The trial court awarded appellee a recovery of $3,014.67, together with interest thereon at the rate of six per cent per annum from November 3, 1942. The sum represents an excess of charge items against appellants over credit items which are set out in the judgment. Those which we need notice here are the following charge items:

1. For 60,000 pounds of cotton seed at $44.00 a ton, or.... $1,320.00
2. For 30,000 pounds of lint cotton at 18 cents per pound, or ..................... 5,400.00

Which cotton and cotton seed would have been produced by plaintiff had the seed that he purchased of defendants in the early part of March, 1942, been sound and suitable for planting purposes.

And the following credit item:

1. $1.25 per 100 pounds for picking 90,000 pounds of seed cotton that plaintiff would have raised had the seed in the first instance he planted and purchased from the defendants been reasonably sound and suitable for planting purposes ........ $1,125.00

Field cotton (that is cotton as it grows in the field) consists of both lint cotton and cotton seed. The undisputed evidence shows that field cotton (referred to as seed cotton in the pleadings) contains 800 to 1,000 pounds of cotton seed to each 500 pounds of lint cotton. It is apparent that the trial court in calculating the amount of damages sustained accepted the ratio of 1,000 pounds of cotton seed to 500 pounds of lint cotton. This was done apparently by giving the effect to the jury's answer to Special Issue No. 12, as corrected. However, if the issue be entirely disregarded and appellee's damages be calculated upon the most unfavorable basis (to him) permissible under the evidence, the ratio of 800 pounds of cotton seed to 500 pounds of lint cotton would have to be accepted. Instead of the recovery being calculated upon a 60,000 pound cotton seed basis, it would have to be calculated upon a 48,000 pound cotton seed basis or at $44 a ton—$1,016 instead of $1,320, a differ-

ence of $304. However, picking costs would be calculated upon a 78,000 (30,000 plus 48,000) pound basis rather than a 90,000 pound basis which would reduce the figure of $1,125 to $975, a difference of $150, which when subtracted from $304 leaves a balance of $154.

■ We suggest a remittitur of this amount, together with interest thereon from November 2, 1942. Provided such remittitur be filed within fifteen days of the date hereof, the judgment of the trial court will be reformed so as to award appellee a recovery of $2,860.67, together with interest thereon from November 2, 1942, at the rate of 6% per annum, and as reformed the judgment will be affirmed. Otherwise the judgment of the trial court will be reversed and the cause remanded for new trial.

## On Motions for Rehearing.

As suggested by this court in its original opinion, appellee has filed a further remittitur, and we have entered an order reforming the judgment in conformity therewith and affirming the judgment as so reformed.

The remittitur was filed without prejudice to appellee's motion for rehearing which is now before us for consideration. Rules 439 and 440, R.C.P., relate to remittiturs in the Courts of Civil Appeals. Rule 439 provides that "it shall be lawful for the party in whose favor such excess of damages has been rendered to make such remittitur in the Court of Civil Appeals in the same manner as such release is required to be made in the district or county court." Rule 328, relating to procedure in the district and county courts, provides that: "New trials may be granted when the damages are manifestly too small or too large, provided that whenever the court shall direct a remittitur in any action, and the same is made, and the party for whose benefit it is made shall appeal in said action, then the party remitting shall not be barred from contending in the appellate court that said remittitur should not have been required either in whole or in part, and if the appellate court sustains such contention it shall render such judgment as the trial court should have rendered without respect to said remittitur."

■ We have concluded that the filing of the remittitur did not operate as a waiv-

er of appellee's motion for rehearing. Appellee does not by assignment contend that he is entitled to a new trial, in order that he might have a jury determination of the exact ratio of cotton seed to lint cotton of such field cotton as would have been raised by appellee had the seed purchased by him been sound. On the contrary, appellee's assignments assert that we erred in not accepting the jury's answer to special issue No. 12, as corrected. The assignments presenting this contention are overruled. We adhere to our holdings on the point expressed in our original opinion and further discussion is deemed unnecessary. Appellee's motion for rehearing is overruled.

Appellants have likewise filed a motion for rehearing. In connection therewith it is necessary to mention but one matter.

In their original brief filed herein appellants stated: "The only testimony in the record bearing upon the ratio between the amount of lint cotton and the amount of cotton seed in a bale of cotton was the' testimony of Mr. Root that Del Fos cotton seed will produce between 800 and 1,000 pounds of seed to 500 pounds of lint cotton." This statement from the brief, as well as the following statement in the original opinion, is supported by the record, viz: "The undisputed evidence shows that field cotton (referred to as seed cotton in the pleadings) contains 800 to 1,000 pounds of cotton seed to each 500 pounds of lint cotton."

Appellants, however, say that they have a right to a jury finding upon this ratio. The most favorable finding under the evidence from appellants' standpoint would be the ratio of 8 to 5, and that is the ratio upon which the judgment as reformed is based. It is difficult to perceive wherein appellants are injured. As above pointed out, appellee, who might have secured a jury finding of 9 to 5, or 10 to 5, under the evidence, is not raising this particular point in his motion for rehearing. It is the purpose of the rules relating to remittiturs to prevent expensive and time-consuming retrials of causes where the only errors appearing relate to the amount of an award which can be rendered harmless by a reduction of such amount. We believe this is a proper case for the application of the rules relating to remittitur.

Appellants' motion for rehearing is overruled.