## FRANKLIN LIFE INS. CO. v. HEITCHEW.

### No. 11070.

Circuit Court of Appeals, Fifth Circuit.

Dec. 15, 1944.

Rehearing Denied Jan. 13, 1945.

Writ of Certiorari Denied April 2, 1945.

See 65 S.Ct. 914.

72

Tom K. Eplen and Frank E. Smith, both of Abilene, Tex., for appellant.

E. T. Brooks, of Abilene, Tex., for appellee.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

This appeal searches the effect of the so-called presumption against suicide when the judge acts on a motion for an instructed verdict; and what he should tell the jury about it when he submits the case to them for decision.

The suit is upon a policy of life insurance promising to pay $2,500 at death, but containing an exception if death should occur within one year by self-destruction, whether sane or insane. Death occurred about ten months after the date of the policy, and the insurer pleaded this exception as its defense. Statutory damages and attorney's fees were enough to make the principal amount claimed in excess of $3,000, and federal jurisdiction is conceded.

On the trial the evidence as to the manner and cause of the death was wholly circumstantial. The circumstances, without important conflict in the testimony, are in brief these: The insured, Heitchew, was thirty-four years old, happily married, living with his wife in his mother's home. He was devoted to both. The policy was payable to the mother, but if she died before he did, to his wife. He was an accountant, of fine mind, and in easy financial circumstances, having about $1,500 in the bank at his death and considerable in-

vestments, and owing only small current debts. His health had been generally good, though he was underweight, and he passed his physical examination when the policy was issued. Four months later he was attacked by acute arthritis in his knee, and remained in bed several weeks, and was on crutches for several weeks more. He began to think he had ailments which his physician did not think he had, and the physician terms him psychoneurotic, meaning thereby, as he explains, that he had imaginary ailments. There is no evidence that he was depressed or despondent, or had ever spoken of ending his life. Just before his death he had become much better, was able to walk and drive his car, and had 'phoned his business associates that he would return to his office in a few days. On the evening of his death he helped his wife wash the dishes after supper, and said he was going out to attend to some business and would return shortly. He drove to his office and was seen to enter it. Afterwards he returned home, but told his mother he had forgotten something and would be back immediately. His car was found later, parked and locked, near a hotel with which he was familiar, and in the car were some letters still unopened. Shortly before midnight the night engineer of the hotel was in the lobby and heard something hit the skylight of the mezzanine roof, and on investigation found Heitchew on it dead, he having struck and partly crashed through the grating over the skylight in a sitting posture, his buttocks protruding through. He called in some officers of the law, and on investigation it was found that one leg was broken and his body generally bruised or crushed, and "the back of his head was pretty well mashed up". There was no testimony as to what if any part of the skylight his head could have hit. Heitchew's car keys were in his pocket, and his pocketbook containing papers were found, but no money, although he usually carried a substantial amount. The hotel building was seventeen stories high. On looking upwards with flashlights from the place of the body a window screen could be seen hanging outward at the bottom, all other screens being closed. Going up to that screen, which was on the fourteenth floor according to most of the witnesses, it was found to cover a window at the end of a corridor and adjacent to the door of the elevator. The screen was hinged at the top of the window frame, and had a hook or catch on each side near the bottom, but these were unfastened, so that the bottom of the screen could be pushed outward, and it was hanging slightly out. The engineer testified that he had checked all the screens on that hallway about thirty minutes before, and they were all fastened. The lower sash of the window was up. On the wooden portion of the window sill, near the right·end, was a dark smudge or streak, extending (according to most of the witnesses) across the sill, which looked like a rubber heel might have been dragged across it, and on experimenting with a rubber heel such a mark was made. Heitchew had on rubber heeled shoes. There was no sign of a struggle in the hall, no blood, or anything else to indicate foul play. The room opposite the elevator door was occupied by two soldiers that night, but they were not interviewed; nor were any other guests on that floor. Only one elevator was running, the other being locked, and the negro elevator boy on duty said he did not remember taking Heitchew up. The boy did not testify in the case. There was no expert testimony as to what may have produced the wounds on the head, or whether they alone would have produced unconsciousness or death. There was evidence that Heitchew often had attacks of difficulty in breathing, going out on the porch for fresh air. It was a warm night.

On these facts the theory of the appellant, which would defeat recovery if true, is that Heitchew went to the fourteenth floor of the hotel, opened the screen, and purposely plunged to his death. The appellee contends that this is not proven, particularly in the face of the "presumption against suicide", and that reasonable theories consistent with the presumption are that he was slugged on the head, robbed, and his body thrown from the window; or that having gone up to see someone on the fourteenth floor, he sat in the window to get fresh air, drawing his foot upon the sill, and unintentionally fell out, dragging his heel across the sill. Neither theory can be said to be demonstrated. The physical facts are consistent with the theory of suicide, except that it appears that Heitchew was sane, not despondent, young, well circumstanced, and had no apparent motive to kill himself. The amount of the insurance was small, and by waiting two months would have been incontestible against suicide. It is,

however, true that suicides do occur without a provable motive, and that motive or its absence is only a circumstance to be considered. The theories of appellee are met by difficulties, such as a want of proof of another purpose on Heitchew's part in being on the fourteenth floor of the hotel at all, or of any contest or struggle with a robber; or if he sat in the window, how the screen became unfastened if not by him. The force of the "presumption against suicide" as opposing the appellant's theory and as aiding the theories of the appellee is thus important.

The presumption must not be confused with the burden of proof on the issue. It is well settled in a case like this, where the policy promises payment on death, and death by suicide is made an exception, that the insurer has the burden of proving his special defense, and if it is not proven by a preponderance of the evidence the defense fails; but on the other hand where the policy promises payment only in case of accidental death or death by accidental means, that the burden is on the plaintiff to prove such a death, even though the insurer specially pleads that it was suicide, so that if a preponderance of the evidence does not show accident as against suicide, the plaintiff fails. Travelers Insurance Co. v. Wilkes, 5 Cir., 76 F.2d 701. In both classes of cases the so-called presumption against suicide may come into play, not to determine which side has the burden of proof, but only in trying the issue and in connection with the evidence, or the lack of it. The discussions of the presumption in both kinds of cases are pertinent. They are so numerous, in this court and in others, as to be incapable of profitable review. We will refer to a few only.

In Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229, there was involved a presumption on the subject created by statute and properly called a presumption of law. Like other true rebuttable presumptions of law this statutory presumption was held not to be evidence, and to have served its purpose when the evidence was heard. The case is not therefore directly applicable here, for no statute of the United States or of Texas is involved. In New York Life Insurance Co. v. Gamer, 303 U.S. 161, 58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218, the presumption against suicide as a rule of general law was considered in reference

to a policy for accidental death, and it was said that it was not evidence and not to be considered as such. This was not said in considering the evidence, for it was not considered at all, but in condemning a charge of the trial court which had made the presumption effective to shift the burden of proof in the case from the plaintiff to the defendants. The cases of Travelers Ins. Co. v. Wilkes, supra, and Fidelity & Casualty Co. v. Driver, 5 Cir., 79 F.2d 713, both by this court, were twice cited as authority, and the opinion concluded with the statement that the determination of the issue, after properly placing the burden, was to be made on a consideration of the proven facts and circumstances, and in reaching a decision the jury "should take into account the probabilities" found to attend the claims of the respective parties. We take this to be an indorsement of the views expressed in the Wilkes case [76 F.2d 704] as follows: "The so-called presumption against suicide * * * is not a rigid, arbitrary rule of law, but is only a special recognition of that common knowledge and experience which forms the background of every trial and the test of every question of probability or credibility. It rests upon the common knowledge, which may be noticed without proof by a judge and jury, that sane persons do not ordinarily kill themselves. That knowledge suffices to tip the scale in favor of accident where it appears that one has died from his own act, but there is nothing to show whether the act was or was not intentional, as well as when a death is proved but the manner of it cannot be ascertained. * * * It does not regulate nor change the burden of proof, but it is an evidentiary presumption which may aid a lack of evidence but cannot prevail against the evidence." In the Driver case [79 F.2d 714] it was similarly said: "In such an issue the so-called presumption against suicide is not a rigid presumption of law, but at most one of fact, the expression of a common observation or experience, so common that judges and jurors may utilize it in a trial without proof of it, that sane persons do not ordinarily take their own lives, but strive to the utmost to preserve them. This is but a part of the general background of common knowledge, against which every question of fact is tried. The likelihood of every occurrence and the credibility of all testimony are tested by it. Common knowledge very often supplies the gaps in the

formal proofs." We think it more accurate not to regard or speak of it as a presumption of law at all, but only as common knowledge or an inference of fact deduced from common experience. Common knowledge is in the nature of evidence, and does not disappear from the case when special circumstances are proven, but the general rule based on that knowledge yields to inconsistent evidence in the particular case. Yet it need yield only to the extent of the inconsistency. The trier of the facts considers the evidence in the light of common experience and decides the real truth of the matter under the evidence.

When in this case the judge was, by the motion for instructed verdict, asked to say that only a verdict for the insurer was possible, he correctly decided that the question of what inferences ought to be drawn from the proven facts in the light of common knowledge was for the jury. While the physical circumstances are consistent with the theory of suicide, they do not demand that conclusion. There is no circumstance which is wholly inconsistent with accident, or a slugging and robbery. The absence of motive for suicide and the folly of not waiting a few weeks for the policy to become incontestible are facts to be weighed. The jury were properly left to make the inferences and to consider the reasonable probabilities. Mayfield v. Aetna Life Ins. Co., 5 Cir., 100 F.2d 199; Federal Life Ins. Co. v. Thornton, Tex.Civ. App., 21 S.W.2d 352.

The trial judge instructed the jury in these words: "In a case like the one on trial the law creates a presumption that Mr. Heitchew did not die by self-destruction, or as we ordinarily say, commit suicide. Hence the burden is upon Franklin Life Insurance Company in this case to prove by a preponderance of the evidence, as in any other case, that the deceased voluntarily, designedly, or intentionally killed himself". This instruction was his only reference to the presumption. He correctly placed the burden of proof and gave the correct rule for bearing it; but the statement that the "law creates" a presumption against suicide was not accurate, nor the true reason why the burden of proof was on the Insurance Company, as above explained. The appellant, however, cannot complain of it, since it is verbatim one of its requests to charge. A refused request was to the effect that the evidence to carry the burden need not prove suicide beyond a reasonable doubt, and that when circumstances were shown as to how the fatal injury occurred "and that same might have been intentionally inflicted by the insured for the purpose of destroying himself", the presumption disappears. This request, correct in the first part, could only be confusing in its latter part. It would be understood, if given, to wipe out all consideration of the improbability of suicide on affirmative proof merely that there might have been suicide. The judge instead correctly instructed the jury further about the preponderance of evidence and the weighing of the circumstances, and told them that if they found the preponderance of the evidence to be that Heitchew died by suicide, they should find for the defendant, but that if the evidence did not show by a preponderance that there was suicide, the verdict should be for the plaintiff. He then added: "You are charged that if the testimony is so evenly balanced that the jury cannot decide the issue by a preponderance of the testimony, the plaintiff will be entitled to recover". This is specially excepted to, but we discern no error in it. It adds nothing to the charge already given about the burden of proof being on the insurer and the necessity of bearing it by a preponderance of the evidence. If the evidence is really in equipoise, nothing is established. Mayfield v. Aetna Life Ins. Co., 5 Cir., 100 F.2d 199.

The judgment is affirmed.