**UNITED FIDELITY LIFE INS. CO. v. HOLLIDAY.**

No. 5999.

Court of Civil Appeals of Texas. Amarillo.

Nov. 21, 1949.

Rehearing Denied Jan. 16, 1950.

140

Storey, Sanders, Sherrill & Armstrong, Dallas, for appellant.

Frank & Frank and C. M. Means, Dallas, for appellee.

STOKES, Justice.

This action was instituted by the appellee against appellant for damages which she alleged she suffered in a fall occasioned by her foot being entangled with a telephone cable. She was employed by appellant as stenographer and secretary in its office in Dallas. Appellant installed and maintained in its office a booth in which one of the telephones was located and which appellee had occasion to use in the line of her duties on October 14, 1946. After completing the telephone conversation with a customer of appellant, appellee started to emerge from the booth and was tripped and thrown to the floor of the office by a small cable attached to the telephone. It appears that while she was engaged in the conversation, her foot became entangled with the cable, tripped her as she emerged and caused her to fall. She alleged that as a result of the fall she was severely injured; that her head was bruised and the bones of her back were strained, dislocated and fractured and

that, as a result, she suffered permanent injuries which materially reduced her earning capacity.

Appellant urged numerous special exceptions to the petition which were overruled and the case went to trial upon the issues made by the petition, a general denial by appellant and special pleas which will hereinafter be discussed. The case was submitted to a jury upon special issues and upon the verdict returned in answer thereto, judgment was originally rendered in favor of the appellee for $13,920. Upon a hearing of appellant's motion for a new trial alleging, among other things, misconduct of the jury, the court required a remittitur of $5220. The remittitur was filed by appellee and the court reduced the judgment to $8700 and then overruled appellant's motion for a new trial. It perfected an appeal to the Court of Civil Appeals of the Fifth District at Dallas, and the case has been transferred to this court by order of the Supreme Court.

Appellant assails the judgment and contends it should be reversed because, first, the court erred in refusing to set aside the entire verdict and grant its motion for a new trial because of the alleged misconduct of the jury; secondly, the court erred in admitting testimony and submitting issues as to the nature and extent of appellee's alleged injuries upon medical testinony based upon x-ray films because the films were not properly identified as being x-ray films of the appellee; thirdly, in refusing to permit joinder of the Southwestern Bell Telephone Company as a party defendant; and, fourthly, in entering judgment upon the verdict because it was shown the jury computed appellee's damages upon an assumption that she would have earned more in the future than she had earned theretofore.

■ The testimony showed that the jury improperly considered and included in its verdict, an amount sufficient to cover what it thought would probably be the attorneys' fees which appellee would have to pay her attorneys for their services in conducting the litigation. Appellant contends that the error of misconduct was not cured by the action of the trial court in requiring the

remittitur and entering judgment for the remainder because the testimony showed the item of attorneys' fees was so intermingled in the discussion and consideration of the jury that it was not possible definitely to determine the amount that was added as attorneys' fees. This question has been before the courts in a number of cases and it is now well settled that where the court is unable to say the jury would have reached a verdict for the amount remaining after deducting the amount added on account of the misconduct, a remittitur will not cure the error. City of Waco v. Darnell, Tex.Com.App., 35 S.W.2d 134; St. Louis Southwestern Ry. Co. of Texas v. Lewis, Tex.Com.App., 5 S.W.2d 765; Moore v. Ivey, Tex.Com.App., 277 S.W. 106; Southern Traction Co. v. Wilson, Tex. Com.App., 254 S.W. 1104, 1105; Houston & T. C. R. Co. v. Gray, 105 Tex. 42, 143 S. W. 606.

■ In our opinion, however, this case is not governed by the holdings of the above cited cases. It has also been well established by the decisions that where the portion of the jury's verdict that is tainted with misconduct is capable of definite and accurate ascertainment, and where the jury acted free from prejudice and passion, a remittitur of the portion so tainted by the misconduct will cure the error and that portion of the verdict which is free from the taint of misconduct will be permitted to stand.

■ Upon the hearing of the motion for a new trial, eight of the jurors were called as witnesses and, while some of them appeared to be hazy and indefinite as to the exact manner in which the amount for attorneys' fees was added to their computation of appellee's damages, all of them testified in effect that the question of the amount of damages which should be awarded to appellee was first discussed and that the sum of $8400 was agreed upon by all of them. To this amount was added $300 for doctors' bills, making the total amount to which she was entitled as damages $8700. They said that, after arriving at that sum, the jury then discussed the question of expenses and particularly attorneys' fees which it would probably be necessary for

appellee to pay her attorneys. They said that some of the jurors thought it would be around 10 per cent, others 25 per cent, some of them thought it would probably be as much as 60 per cent of the amount allowed her as damages and that, finally, they all agreed upon 60 per cent and that that amount was added to the $8700. A calculation will show that 60 per cent of $8700 amounts to $5220, the amount required as a remittitur by the trial court. There is no evidence of passion or prejudice of any of the jurors. Their testimony shows clearly that, in adding the attorneys' fees to the verdict, they were convinced that appellee was entitled to $8700 net to her and that they believed it was right and proper that appellant pay such additional sum as might be necessary to discharge the attorneys' fees which appellee would probably have to pay. Under these circumstances and in view of the testimony of the jurors, we conclude that the amount added by the jury as attorneys' fees was capable of definite and accurate ascertainment and that the remittitur required by the court and filed by appellee removed all tainted portions of the verdict and that the judgment for the remainder should be permitted to stand. International-Great Northern R. Co. v. Cooper, Tex.Com.App., 1 S.W.2d 578; El Paso Electric Co. v. Whitenack, Tex.Com.App., 1 S.W.2d 594; Texas Employers' Ins. Ass'n v. Lightfoot, 139 Tex. 304, 162 S.W.2d 929; Burchfield v. Tanner, Tex.Civ.App., 175 S.W.2d 756.

■ .The next contention of appellant pertains to the action of the trial court in permitting the physicians and surgeons to base their testimony concerning appellee's injury upon x-ray films because the films were not properly identified as being x-ray films of the appellee. The films themselves were not introduced in evidence and were not exhibited to the jury. Several physicians and surgeons testified that appellee suffered a fractured sacrum and used the x-ray films in giving their testimony. The films were made in the offices of Dr. Beaver who is shown to be a specialist in the x-ray field. Dr. Beaver testified that he did not personally make the films, but that he had assistants who were capable and qualified to make them and that they, no doubt, were taken in his office in the usual way. He used the term "no doubt" and would not be positive they were made in his offices because, he said, they were evidently taken by some of his assistants and that, in order to be positive they were taken in his office, he personally would have had to take them or see them taken and he did not remember taking them or seeing others do so. He said appellee's case was referred to him by Dr. Short; that he recognized the films as work that was probably done in his office; that they had his marker on them; that the films were the kind of work he and his assistants performed; but that he, himself, did not make them and, while he believed they were made in his place of business, he could not know because he did not personally make them. Appellee testified that Dr. Beaver made the x-rays; that there were four of them; that Dr. Short made her appointment with Dr. Beaver; that Dr. Short received the films; that she then had them; and that she had no other x-ray films made by anyone. She said that, after Dr. Beaver returned the films to Dr. Short, she was informed by Dr. Short that she had a fractured sacrum. No one questioned the films as being the same ones to which appellee referred in this testimony. She said that she received the films from Dr. Short; that her name was written on the films when she received them and it was still on them. The pith of this testimony is that appellee had four x-ray films made by Dr. Beaver; that they were delivered to Dr. Short; that Dr. Short delivered them to the appellee; and that she brought them to the courtroom. The films had appellee's name on them and contained Dr. Beaver's identifying mark. We think the films were sufficiently identified as being the films taken by Dr. Beaver of the injured portion of appellee's spinal column.

■ Beside that, however, the extent of appellee's injuries did not depend entirely upon the x-ray films. Dr. Kindley testified that, from what he knew about the case, even if he had never seen the x-ray films, he would have diagnosed her case as a fractured sacrum. Dr. Nash

testified that he diagnosed the case as a fracture of the sacrum, called coccygodynia, which he said was the technical term of a fractured coccyx, or lower extremity of the sacrum. He said, further, that he found objective symptoms of coccygodynia and that he based his diagnosis upon the objective symptoms and used the x-ray films merely to verify his diagnosis. The question at issue was whether or not appellee had been injured by the fall in appellant's office. The x-ray films only revealed the specific result of the fall as being a fracture of the sacrum. If appellee suffered injuries from her fall and it was the result of appellant's negligence, as was found by the jury, the question of whether or not her injuries consisted specifically of a fracture would not be of controlling importance. We conclude that no reversible error is shown by this contention of appellant and its assignments of error pertaining thereto will be overruled.

■ The next contention made by appellant is that the court erred in overruling its motion to dismiss the entire case for failure of appellee to join as a defendant the Southwestern Bell Telephone Company and in sustaining the telephone company's motion to dismiss it from the case. The question was also raised by special exception, which was overruled. In its answer, appellant sought to bring in the telephone company as a party defendant but it was dismissed as such upon its motion and all of these rulings of the court are presented as reversible error. It appeared from the testimony that appellant's place of business was located in Station No. 7, as designated on the records of the telephone company, and that its rules concerning the installation and maintenance of telephones were in force when appellee's injuries occurred. The contract between the telephone company and appellant for installation of the telephones provided that all work of installation of inside wiring and equipment on its premises should be done by the telephone company and that the company should not be requested to attach its instruments, equipment and lines to inside wiring installed by others than its own employees. It further provided that appellant would notify the telephone company in writing whenever installations or any construction was necessary; that appellant would pay the charges therefor; and that it would not rearrange, disconnect or remove any apparatus or wiring installed by the telephone company, nor permit others to do so, except upon the written consent of the telephone company. The evidence showed that the telephone booth was installed by appellant, owned by it and was part of its office equipment. Appellant contends that, since appellee was injured by her foot becoming entangled in the telephone cable and that the telephone company reserved the exclusive right to perform any work of installation or change that might become necessary, the telephone company was a proper party defendant and the court erred in overruling appellant's efforts to make it such.

The issues concerning the telephone company's connection with the case and appellant's efforts to make it a party were tried, and the rulings of the court made, in a pretrial hearing in which the court sustained the motion to dismiss the telephone company and overruled appellant's special exceptions upon the grounds that appellee had not made the telephone company a party defendant and sought no recovery against it and that appellant, although eligible, was not a subscriber to the Workmen's Compensation Act and did not maintain compensation insurance for its employees. The court concluded, therefore, that, since the telephone company was not appellee's employer, it would be entitled to defenses to which appellant would not be entitled, viz: contributory negligence and assumed risk. In our opinion no error was committed by the action of the court in dismissing the telephone company. Appellant was appellee's employer and it maintained more than three employees. It was not a subscriber to the Workmen's Compensation Act and it was therefore not entitled to the defenses of contributory negligence and assumed risk under Article 8306, R.C.S., Vernon's Ann.Civ.St. art. 8306. The telephone company, not being appellee's employer, would have been entitled to these defenses and, in fact, it concluded them in

its answer filed subject to its motion to dismiss. Appellant sought judgment over against the telephone company in the event judgment was rendered against appellant. These conflicting defenses would necessarily have resulted in confusing the minds of the jury as to the issues and we think they rendered the joinder of the telephone company as a defendant impracticable. Moreover, while appellant pleaded that the telephone company was under the duty of maintaining the telephone in its office in proper condition, it introduced the contract between it and the telephone company which provided that it would notify the telephone company in writing whenever alterations or new construction on its premises was necessary, and it neither alleged nor claimed it had notified the telephone company of any necessity for repairs to the telephone or its connections. In our opinion the telephone company was neither a necessary nor a proper party to the suit and this contention of appellant will be overruled. Fidelity Union Casualty Co. v. Riley, Tex.Civ.App., 26 S.W.2d 682 and authorities there cited.

The remaining contention presented and urged by appellant is that the court erred in entering judgment based upon the computation of the jury as to the loss of future earning power of appellee upon the assumption that she would have earned more in the future than she had in the past. The evidence showed she was earning $165 per month when the injury occurred. It was further shown that stenographers and others of her experience and ability were earning in excess of $200 per month in Dallas at the time of the trial. She was then earning $166 per month. The jury computed her loss of earning capacity at $35 per month for a period of twenty years. Appellee was fifty-two years of age at the time of her injury and the computation adopted by the jury amounts to $8400. That was the amount found by it as damages for loss of earning capacity and it was amply supported by the testimony. There was, therefore, no error committed by the court in adopting the computation based upon that which was used by the jury in arriving at its verdict.

We have carefully examined all of the assignments of error and contentions urged by appellant and, in our opinion, none of them reveals reversible error. The judgment of the court below will, therefore, be affirmed.