**COAL OPERATORS' CASUALTY COM-PANY, Appellant,**

v.

**R. J. HOLLOWAY, Appellee.**

No. 6792.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 30, 1965.

Rehearing Denied Jan. 19, 1966.

Garrison, Renfrow, Zeleskey, Cornelius & Rogers, Lufkin, for appellant.

John H. Seale, Jasper, for appellee.

STEPHENSON, Justice.

This is a suit brought under the Workmen's Compensation Law. Judgment was rendered for plaintiff that he recover for 10 weeks total disability and 200 weeks partial disability based upon jury findings. The parties will be referred to here as they were in the trial court.

Defendant first complains of the action of the trial court in overruling its objection to certain hearsay testimony and permitting plaintiff to testify as follows on re-direct examination:

"Q. Did Dr. McGrath tell you your back was in such shape you weren't able to work?

A. Yes, sir."

The evidence, as given, was clearly hearsay and was inadmissible. Traders & General Insurance Company v. Wheeler, Tex. Civ.App., 271 S.W.2d 679. However, after plaintiff rested, defendant put on its evidence and rested and the following transpired:

"By Mr. Seale: Your Honor, we have no further witnesses to call on behalf of the plaintiff, and in view of that, I do think it appropriate to request the Court to instruct the jury not to consider any testimony as to anything that Doctor McGrath might have told anyone since Doctor McGrath is not appearing here in person in the case.

"By the Court: Doctor McGrath is not appearing in the case?

"By Mr. Seale: That is correct.

"By the Court: Then, ladies and gentlemen of the jury you are instructed to disregard any statements made by anyone during the progress of this trial as to what Dr. McGrath told them since that witness will not be testifying. Anything further, gentlemen?

"By Mr. Seale: Thank you, Your Honor, that's all we have."

■ Defendant argues the harm had already been done by reason of the trial court having overruled the objection at the outset and the jury having been permitted to consider such evidence during the trial, and that the prejudicial effect of such action could not be cured by the later instruction by the court. No authorities are cited which support this position. We assume that juries do pay attention to instructions by trial judges and that this jury did not consider the statement by plaintiff as to what Dr. McGrath told him. In any event, the improper statement did not go into detail as to the nature of the injury nor the extent of the disability and we cannot say the action of the trial court probably did cause the rendition of an improper judgment in the case. Rule 434, Texas Rules of Civil Procedure.

■ Defendant next complains of the action of the trial court in refusing to instruct the jury that it could consider certain testimony on the lump sum issue only. Plaintiff was permitted to testify that one of his nine children was deformed and that plaintiff's wife had to stay with this child and could not go out of the home to get a job. It is argued that such testimony was calculated to arouse prejudice and inflame the minds of the jurors. The record in this case shows that defendant relied upon testimony revealing that plaintiff had worked a considerable part of the time since the date of his injury for the obvious purpose of showing that plaintiff's injury was not as disabling as he claimed. Under these circumstances, it has been held to be proper for a claimant to show that he has been compelled to work in order to support his family, even though he was not physically able to do so. Muro v. Houston Fire & Casualty Ins. Co., Tex.Civ.App., 310 S.W.2d 420. The testimony admitted in this case did no more than show that plaintiff was compelled to work because of economic urgency and explained why his wife could not get out of the house in order to work and earn money. The point is overruled.

■ It is next contended that there was no evidence to support the finding of the jury that plaintiff's duration of partial incapacity was 200 weeks, that there was insufficient evidence and that such finding was contrary to the weight and preponderance of the evidence. The same contentions are made as to the finding of the jury that plaintiff had an average weekly wage earning capacity during the period of partial incapacity of $33.19. In passing upon the "no evidence" points we consider only the evidence favorable to the finding of the jury.

The plaintiff gave the following testimony which was favorable to him: He had never had a lawsuit before and had never filed a compensation claim before. He was married and had nine children all living with him at Liberty. One of the children was deformed and bed-ridden. His wife had to stay with this child and could not get out of the house to earn money. This family had no source of income other than that which plaintiff could bring home. Plaintiff and another employee were loading stumps at the time plaintiff stepped back in a hole and hurt his back. The stump weighed around 150 to 200 pounds. The small of his back and legs hurt him when he stepped in the hole. He had never had trouble with his back or legs before, and had never injured them. They did not load that stump after plaintiff stepped in the hole, but drove the truck on back to the saw mill. Plaintiff

returned to work the next day and worked an hour or so, but got a catch in his back and legs and got to where he couldn't walk. The other employee helped him get out of the woods and back to the station and his employer took him to Dr. Biggs. He had never been to Dr. Biggs before. Dr. Biggs examined him and gave him some pills and a shot. Then his employer took him home. He went to see Dr. Biggs a second time after two weeks, and a third time after another two weeks. Plaintiff's attorney sent him to see Dr. McGrath, and defendant sent him to see Dr. Stephenson. In December plaintiff tried to help Arson Strahan haul some logs for two weeks or better. His back was bothering him but he worked because he had to take care of his family. Later he hauled some logs for Kimble Scott for two weeks or better and his back was no better by then. His next work was for Mr. Allen who came out to his house and asked him to return to work. Plaintiff also testified as follows:

"Q. Now has your back gotten better then in the last few months, R. J.?

A. No, sir, not much better.

Q. Well, are you—do you, yourself, feel like that your back is in any better shape now than it was a year ago?

A. No, sir."

"Q. You don't feel like it's going to get any better?

A. No, sir."

"Q. You feel like you are any more able to work now than you were six months ago?

A. No, sir."

On cross-examination plaintiff testified: He had been picking some easy jobs since he got hurt. When he stepped in the hole his back and legs bothered him. By bothering him he meant they hurt him. His legs were getting numb from his hips down to his feet. The pain was where the main leaders were right down the back of his legs. The pain was in the lower part of his back, where his hips join on to his back. It hurt him all of the time, and still hurts him now.

▪ There seems to be no fixed rule as to the amount of evidence required to establish the extent of disability. The rule seems to be that where it can reasonably be inferred from the evidence that the plaintiff's disability resulting from his injury, leaves him able to procure and retain employment, but impairs his ability to perform the usual task of a workman to such an extent that he is able to engage only in employment which is less remunerative than that which he could have performed but for his injury, and has thereby suffered a depreciation or reduction of his earning capacity, then a verdict in his favor on the issue of partial incapacity will be affirmed. The evidence above set forth supports the findings of the jury that plaintiff has suffered partial incapacity for a period of 200 weeks and that his average weekly wage earning capacity during the period of partial incapacity was $33.19. The points are overruled.

▪ In passing upon the sufficiency of the evidence and the great weight and preponderance of the evidence points in reference to the foregoing points of error, we consider the entire record.

Plaintiff did not call a doctor to testify as to his physical condition. The evidence shows that plaintiff's employer, Allen Erwin, carried plaintiff to see Dr. Biggs in Leesville, Louisiana, the day after the accident. Neither party called Dr. Biggs. Plaintiff's attorney sent plaintiff to see Dr. McGrath in Jasper, Texas; however, Dr. McGrath did not testify in this case. Defendant sent plaintiff to see Dr. G. Bruce Stephenson in Beaumont, Texas, and this was the only medical witness called to testify. Dr. Stephenson testified in effect that he found no disability, and in his opinion plaintiff was able to perform the work he had been doing.

The evidence shows that Allen Erwin, plaintiff's employer at the time of this accident, October 2, 1963, went out to plaintiff's house and asked plaintiff to come back to work. Erwin's records showed the first pay period ended February 2, 1964, when plaintiff returned to work. Plaintiff continued to work for Erwin from that date until a week or two before the trial which began October 13, 1964. Plaintiff continued to earn about the same amount of wages after the accident as before. Several of plaintiff's coworkers testified that they worked with plaintiff after the date of the accident and that plaintiff made no complaint of pain and gave no evidence of being disabled. However, all of the evidence did no more than raise issues for the jury to determine as to the extent of plaintiff's disability. The findings of the jury are not so against the weight and preponderance of the evidence to be clearly wrong or manifestly unjust. The points are overruled.

Judgment affirmed.