**TEXAS GENERAL INDEMNITY COMPANY, Appellant,**

v.

**L. C. THOMAS, Appellee.**

**No. 335.**

Court of Civil Appeals of Texas.

Tyler.

May 9, 1968.

Rehearing Denied May 30, 1968.

464

Ramey, Brelsford, Flock, Devereux & Hutchins, Jack W. Flock, Tom Henson, Tyler, for appellant.

Phenix & Wilder, Bill Wilder, Henderson, for appellee.

MOORE, Justice.

Appellee, L. C. Thomas, brought this suit against appellant, Texas General Indemnity Company, to recover workmen's compensation benefits for an accidental injury while in the course and scope of his employment with Marathon Oil Company. Trial was before a jury and resulted in a verdict of total and permanent disability; however, the jury also found that a previous injury contributed to his incapacity in the amount of 30%. Based upon the verdict, the trial court rendered judgment in favor of Thomas for benefits in the total sum of $8,973.-64. Appellant's amended motion for new trial was overruled and this appeal resulted.

By the first point of error, appellant contends that the trial court erred in admitting into evidence plaintiff's x-rays, Exhibits Nos. 3, 4, 5, 6 and 7, and in permitting plaintiff's medical witness, Dr. James H. Mann, to interpret the same and to render an opinion therefrom, because (1) a proper predicate had not been laid showing that the x-rays in question were x-rays of the plaintiff, taken by a qualified person while plaintiff was properly positioned, and (2) that the x-rays constituted hearsay and were therefore incompetent evidence for any purpose.

In laying a predicate for the introduction of the x-rays, appellee first offered the

testimony of Ervin M. Daugherty, who testified that in his capacity as hospital administrator at the Henderson Memorial Hospital, he kept in his care, custody and control all records of the hospital, including the x-ray film in question. He identified the x-ray film and certain reports attached thereto as being the x-rays in the hospital file of appellee, L. C. Thomas. He testified that the same were made on March 14, 1967, by the Radiology Department of the hospital upon the request of Dr. James H. Mann; that all x-ray work for the hospital was done under the direction of Dr. J. P. McClelland, a radiologist; that after the x-rays were taken, Dr. McClelland made a report of his findings, which was initialed by him. He further testified that the report, as well as the x-rays, was a part of the records of Henderson Memorial Hospital kept in the regular course of business and had, at all times, remained under his care, custody and control; that such records were made by hospital personnel with personal knowledge of the facts stated on the record.

Dr. James H. Mann testified that on March 14, 1967, he ordered x-rays of appellee's lower back and sacral region at the Radiology Department at the Henderson Memorial Hospital. He further testified that the appellee's Exhibits 3, 4, 5, 6 and 7 were the x-rays which were made by Dr. McClelland's department at the hospital under Dr. McClelland's direction, and that the subject x-rays were made by one of Dr. McClelland's radiological technicians. He identified Dr. McClelland as a radiologist and a specialist in x-rays. He testified that he was familiar with Dr. McClelland's staff at the hospital and that such staff works directly under the supervision of Dr. McClelland; that the members of his staff were competent x-ray technicians, who knew how to properly position a patient's body as ordered by the requesting doctor. He further testified that from his own personal knowledge, the x-ray staff at the hospital had a system of identifying the x-rays of each patient by assigning the patient a number, which number was placed upon each individual x-ray picture, and that as a result of this numbering system, he was able to identify Exhibits 3, 4, 5, 6 and 7 as being the x-rays of appellee, L. C. Thomas. He also testified that the hospital used another method of identifying the x-rays of the patient by placing the x-rays in an envelope with the patient's name written thereon and that the x-ray film in question was taken from the envelope with his patient's name and number written thereon. He testified that the x-ray pictures accurately portray that portion of appellee's body which they purport to represent.

■ We are aware of the rule of evidence requiring that x-ray film, before being admissible in evidence, must be properly identified. It is generally stated that the proof must show, with some degree of certainty, that the x-rays are that of the person involved in the suit; that they were taken by a qualified technician and that such film accurately portrays the portion of the body which they purport to represent. Texas Indemnity Ins. Co. v. Phillips, (Tex.Civ.App.) 153 S.W.2d 503; Texas Indemnity Ins. Co. v. Desherlia, (Tex.Civ. App.) 237 S.W.2d 715.

■ A brief review of the facts shows that appellee was a patient of Dr. James H. Mann. Dr. Mann instructed appellee to go to the hospital for the purpose of making x-rays. He called the hospital and advised and instructed the personnel as to the type of x-ray which he desired. Appellee appeared at the hospital at the appointed time and was assigned a number which appeared on each of the x-rays in question. Subsequently the x-ray film was placed in an envelope which had the appellee's name affixed thereon. These facts, we think, would constitute sufficient evidence to show that the films in question were those of appellee's body. Dr. Mann further testified that he was acquainted with the technicians who worked under the supervision of Dr. McClelland in the Radi-

ology Department at the hospital and knew them to be qualified x-ray technicians. He also testified that the x-ray film in question correctly portrayed the portions of appellee's body which they purported to represent and was of the type ordered by him. It occurs to us that these facts were sufficient to safeguard the rights of the appellant. Consequently, we think a proper predicate was laid for the admission of the x-ray photographs and that appellant's objection was correctly overruled by the trial court. The following authorities, we think, sustain our holding in this respect. The Travelers Insurance Company v. Williams, (Tex.Civ.App.) 355 S.W.2d 728, citing United Fidelity Life Ins. Co. v. Holliday, (Tex.Civ.App.) 226 S.W.2d 139.

By points 2, 3 and 4, appellant contends that there was no evidence or insufficient evidence to warrant the submission of the wage rate issue under Subdivision (1), Section 1 of Article 8309, Vernon's Ann.Civ. St. and that the court erred in entering judgment based on the jury's answer to Special Issue No. 18 finding an average daily wage of $26.24.

The evidence shows that appellee had been in the employment of Marathon Oil Company, his employer, for approximately 29 years. He was originally employed to do construction work and after remaining on the construction crew for 4 or 5 years, he was transferred to the "paint gang" where he remained until his employment was terminated on January 10, 1966. He testified that at the time of his injury, he was earning $3.28 per hour, and worked 8 hours per day, 5 days a week, and was working what is generally known as a forty-hour work week. He further testified that in the year immediately preceding the date of his injury he worked at least 210 days and that his weekly pay amounted to approximately $131.00 or $132.00.

It is without dispute that the determination of appellee's average weekly wage is controlled by the provisions of Art. 8309, Sec. 1, Subdivision (1). The statute provides that "average weekly wages" shall be computed as follows:

"(1) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, for at least two hundred ten (210) days of the year immediately preceding the injury, his average weekly wage shall consist of three hundred (300) times the average daily wage or salary which he shall have earned during the days that he actually worked in such year, divided by fifty-two (52)."

While appellee offered no testimony specifically showing the "average daily wage" or the number of days he actually worked during the preceding year, we believe the facts delineated by his testimony formed a sufficient basis for computing his average daily wage. The undisputed evidence shows that appellee had been in the continuous employment of his employer for approximately 29 years. Although he did not specifically testify that he had worked the full 52 weeks immediately preceding his injury, his testimony of long continuous employment would seem to indicate, circumstantially, at least, that he was a regular employee and had been in the employment for his employer for substantially the whole of the year or for the full fifty-two weeks immediately preceding his injury and was paid at the rate of $26.24 per day. Appellant did not object to any of appellee's testimony, nor did appellant contest the inference left by his testimony that he had been continuously employed for the previous year at a rate of pay of $26.24 per day. It is also significant to note that three of the officials of the Marathon Oil Company, who had access to appellee's employment records, testified in the case, yet none of these officials disputed any of the testimony of the appellee with respect to his wage rate. When viewed in a light most favorable to appellee, we think his

testimony can be interpreted as saying that he worked eight hours per day, five days per week, during all of the year immediately preceding his injury at an hourly wage of $3.28 per hour, or at an average weekly salary of $131.00 or $132.00. The fact that appellee testified that he worked at least 210 days simply shows the minimum days he worked during the preceding year. Thus interpreted, the question of wage rate, as well as the question of compensation rate, became a question of law and no jury issue was required. Casualty Reciprocal Exchange v. Stephens, (Tex.Com.App.) 45 S.W.2d 143; Consolidated Cas. Ins. Co. v. Ray, (Tex.Civ.App.) 267 S.W.2d 880; St. Paul Mercury Insurance Company v. Jackman, (Tex.Civ.App.) 331 S.W.2d 253. However, since the issue was submitted, we think the foregoing evidence would likewise be sufficient to support the jury's finding. Texas Employers' Insurance Association v. Brantley, (Tex.Civ.App.) 394 S.W.2d 824, rev. on other grounds, Tex., 402 S.W.2d 140.

■ But, even though it be conceded that the provisions of the statute were not strictly complied with, appellant nevertheless has the burden of demonstrating that the error complained of was calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure. Appellant has made no effort to demonstrate how the error, if any, resulted in harm. The record shows conclusively that appellee was entitled to the maximum compensation rate. Therefore, the error complained of, if any, could not have caused the rendition of an improper judgment and was harmless. Southern Underwriters v. Grimes, (Tex. Civ.App.) 146 S.W.2d 1058; St. Paul Mercury Insurance Company v. Jackman, supra; Consolidated Cas. Ins. Co. v. Ray, supra; Texas Employers' Insurance Association v. Brantley, supra.

■ By the fifth point, appellant contends that appellee's evidence showing poverty and that he owed debts should have been limited to the issue of "lump sum" and that the trial court committed error in refusing to limit such evidence to the lump sum issue. We do not agree.

It is undisputed that appellee continued to work subsequent to his injury, but he says he did so only because of dire economic necessity. He testified that he was in debt and had no income with which to meet the necessities of life and was forced to return to work in order to support himself and his wife.

■ It now seems to be settled that a compensation claimant is permitted to show that he was forced to continue working after he sustained his injury because of the whip of economic necessity. Muro v. Houston Fire And Casualty Insurance Company, (Tex.Civ.App.) 310 S.W.2d 420; Beseda v. Transamerica Insurance Company, (Tex.Civ.App.) 414 S.W.2d 742, citing cases. It follows, therefore, that if such testimony was admissible for such purpose, no error is reflected by the ruling of the court in refusing to limit the testimony to the "lump sum" issue.

■ By the sixth through the tenth points of error, appellant contends that there was no evidence to warrant the submission of Special Issue No. 14, and in the alternative that the jury's finding thereon was against the overwhelming weight and preponderance of the evidence, and therefore the court erred in entering judgment based on the jury's answer to Special Issue No. 14. In this group of points, appellant takes the position that the appellee failed to establish by competent evidence that either his employer, Marathon Oil Company, or the appellant insurance company had actual knowledge of his alleged injury within 30 days after the occurrence thereof as required in Section 4a of Art. 8307, V.A.T.S. Appellant denied under oath that either the employer or appellant had knowledge or notice of the injury

within the statutory period. In this connection, appellee testified that he was injured on November 19, 1965, while rebuilding a bridge on Marathon's M. A. Price lease, when a heavy timber fell and struck him in his back. After the injury, he testified he turned and walked back across the bridge to the truck and got a drink of water and washed his face and sat down. He stated that the injury occurred around 3 o'clock in the afternoon and that he did not do anything the rest of the day except sit around until the usual quitting time at 4 o'clock. He further testified that on the following morning, he had a conversation with his foreman, Mr. R. E. Garrison, just prior to going to work. He testified that as he and Mr. Garrison walked out of the warehouse, he remarked to Mr. Garrison that he was glad that they were through with those heavy sills that they were working on yesterday because he had hurt his back. He stated that Garrison made no response. Garrison testified that he did not remember such a conversation and denied that appellee had ever told him that he had hurt his back.

Appellant concedes that notice given to a foreman or person in charge of the work is notice to the employer. We think the testimony of the appellee constitutes some evidence of probative force showing that notice was given. At most, the record presents nothing more than a conflict in the testimony in this respect. In passing upon the no-evidence point, this court considers only the evidence favorable to the findings of the jury. When considered in that light, the appellee's testimony is sufficient to sustain the finding of the jury. Coal Operators' Casualty Company v. Holloway, (Tex. Civ.App.) 398 S.W.2d 421.

We have carefully considered all the evidence, both that which is favorable and that which is unfavorable to appellant, and we find ourselves unable to agree with the appellant's contention that the jury's finding upon Special Issue No. 14 is against the overwhelming weight and preponderance of the evidence. Points 6 through 10 are overruled.

Appellant's points 11 and 12 have been examined and found to be without merit and are overruled without discussion.

The judgment of the trial court is affirmed.