**Lindsey McINNES, Appellant,**

v.

**YAMAHA MOTOR CORPORATION, U.S.A., Appellee.**

**No. 13–82–138–CV.**

Court of Appeals of Texas, Corpus Christi.

Sept. 1, 1983.

Rehearing Denied Oct. 13, 1983.

Dante Mattioni, Philadelphia, Pa., Anthony E. Pletcher, Corpus Christi, Paul E. Knisely, Broadus Spivey, Austin, for appellant.

Kathryn Snapka, Guy Allison, Corpus Christi, for appellee.

Before NYE, C.J., and YOUNG and KENNEDY, JJ.

OPINION

KENNEDY, Justice.

Plaintiff-Appellant was injured to the extent of becoming a quadraplegic patient in a one-vehicle accident while driving a 1973 Yamaha TX 650 motorcycle. He brought suit against several defendants, the only one remaining being appellee, Yamaha Motor Corporation, U.S.A. Appellant pled negligence, strict liability, breach of warranty and Deceptive Trade Practices.

A jury below found defective design of the frame and failure of appellee to give adequate warnings or instructions, but also found that neither of such was a producing cause of the accident. The jury also found that appellant's motorcycle did not develop a "wobble" prior to the accident and that appellant failed to keep a proper lookout which was a proximate cause of the accident.

Appellant's first four points of error are evidence points, i.e., that the jury should have found that the defective frame of the motorcycle was a producing cause of the accident and that the jury should not have found that the motorcycle did not develop an uncontrolled wobble prior to the accident. Thus we are required to pass upon the sufficiency of the evidence in each of these matters.

When a factual insufficiency question is presented the appellate court is required to consider all of the evidence in deciding the question. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The case of *Salazar v. Hill,* 551 S.W.2d 518 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.) decided by this Court, was one involving a rear-end collision where the facts were virtually undisputed. The jury resolved all issues in favor of the appellee who had run into the rear of the other automobile. There this Court said:

"As we have noted, the jury is the trier of the facts and as such is in a better position to judge these issues than are we. The jury in this instance answered the negligence issues for the appellees.

From the facts in this case we conclude that the jury findings, attacked by appellants merely indicate that the appellants have failed to carry their burden of proving the alleged acts of negligence. *Stafford v. Hardi,* 464 S.W.2d 958 (Tex.Civ. App.—Dallas 1971, writ ref'd n.r.e.). And the jury's failure to find those facts (of negligence) vital to the appellants' recovery need not be supported by affirmative evidence. *Traylor v. Goulding,* 497 S.W.2d 944 (Tex.Sup.1973). We hold therefore that the findings complained of are not so against the great weight and preponderance of the evidence as to be manifestly wrong."

In other words, it is not necessary for one side to negate by affirmative evidence the evidence presented by the other side. The jury is free to simply disbelieve such evidence.

We have examined the evidence in the case before us and conclude that it was not error for the jury to make the findings complained of. The first four points of error are overruled.

■ In points of error numbers five and six appellant complains of the introduction of evidence tending to show that appellant was intoxicated on the occasion in question. It is argued that such is not admissible absent evidence of negligent conduct. Error is also claimed in allowing the County Medical Examiner to speculate on the degree of appellant's intoxication based upon a reading of the treating physician's notes.

Evidence of two separate blood alcohol tests were introduced into evidence. One test, performed at 6:35 p.m. following the accident, which occurred between 4:45 and 5:00 p.m., showed an alcohol content of .131. An earlier test (5:30 p.m.) showed an alcohol content of .09. In addition, the notes of the treating physician, Dr. Martin, contained in his deposition, stated that appellant was "slightly intoxicated" when he was examined at approximately 8:00 p.m. The Nueces County Medical Examiner, Dr. Rupp, was called by appellee to explain and interpret this evidence. Appellant admitted that he had drunk about six beers before the accident.

Appellant's own evidence was to the effect that this was a one-vehicle accident in which appellant, for some reason, lost control of his motorcycle and went through a guardrail. Appellant contends, of course, that this was caused by a defective motorcycle. However, appellee has its own theory, i.e., the intoxication of appellant at the time in question. We reject the argument that there was no evidence of negligent conduct on plaintiff's part.

Appellant cites *Dorman v. Langlinais,* 592 S.W.2d 650 (Tex.Civ.App.—Beaumont 1979, no writ) as authority for the proposition that evidence of intoxication is inadmissible absent a showing that the driver's performance was erratic. In *Dorman,* however, the appeals court held that "[c]lose examination established that defendant handled himself 'normally' and there is no evidence of any negligent or unusual conduct caused by alcohol." *Dorman* involved a two car intersection collision and the question as to which driver was at fault. Our case, as noted earlier, involves a motorcycle which, for no apparent reason, left the pavement and crashed into a guardrail. This, in itself, is evidence of negligent or unusual conduct. Point of error number five is overruled.

■ As to the alleged error in allowing the medical examiner to speculate about intoxication from reading the treating physician's notes, such is not precisely what happened. The Medical Examiner testified that for the treating physician to make an observation that a quadraplegic was slightly intoxicated, the patient would be in the range of about 0.1% blood alcohol. This, he explained, is due to the fact that there are fewer symptoms of intoxication in a quadraplegic available to the observer since the observation of the patient would be virtually limited to speech and eye movements. The Medical Examiner then took the 0.1% figure and extrapolated it to indicate the level at the time of the accident.

We agree with appellant that Dr. Rupp should not have been permitted to state an opinion concerning the level of alcohol in

the appellant's blood at the time of the accident based upon Dr. Martin's notation that appellant was "slightly intoxicated." Dr. Martin had no recollection of appellant at the time his testimony was taken. He did not state the basis for his opinion, i.e., the factors he observed which led him to his conclusion. Nor did he explain what he meant by the descriptive "slightly intoxicated." Indeed, when asked what that phrase meant, Dr. Martin responded: "It means he was slightly intoxicated."

An analogous situation is found in *Associated Indemnity Corp. v. Dixon*, 632 S.W.2d 833 (Tex.App.—Dallas 1982, writ ref'd n.r. e.), a workers' compensation case where one physician's testimony was based upon another physician's letters concerning the injured employee's condition. The Court held that:

> "[T]hese letters were not a diagnosis of another physician upon which Dr. Daughety [the testifying physician] could base his medical opinion. They tendered no medical findings by Dr. Faust to better enable Dr. Daughety to diagnose Dixon's injury, but offered only Dr. Faust's ultimate conclusion that, within the meaning of the Texas Workers Compensation Act, Dixon was probably totally incapacitated. We hold, therefore, that the information in this letter was not information upon which a physician can rely in reaching a medical opinion. Thus, it was inadmissible for any purpose...."

632 S.W.2d at 835–6.

Given the inherent uncertainty of the term "intoxicated," especially when modified by "slightly," we believe that Dr. Rupp's opinions based thereon provide an even more extreme example than that discussed in the *Dixon* case.

Dr. Rupp was, however, also able to state, based upon the blood-alcohol tests performed at 6:35 p.m. and 5:30 p.m., that at the time of the accident, appellant's alcohol content would have been .05. These two test results were properly in evidence, and an opinion based thereon was admissible and of probative force. Dr. Rupp went on to say that the driving abilities of a motor-

cyclist with .05 alcohol content would be impaired. Given this opinion, we do not feel that the admission of the opinion predicated upon Dr. Martin's observation constitutes reversible error. The point is overruled.

■ In point of error number seven, complaint is made concerning the trial court's ruling that evidence of complaints made to Yamaha of front-end wobbles that resulted in injuries when the occurrences happened at speeds in excess of 40 m.p.h. would be admitted for the limited purpose of showing notice to Yamaha of the propensity of the TX 650 to so act. Counsel for Yamaha reviewed with the witness Martinez sixty-one warranty complaints concerning wobbling. In so doing, the witness stated, when it was known, the speed at which the wobble occurred. Many of these concerned incidents in excess of 40 m.p.h. Subsequently, counsel for appellant sought to elicit testimony from the witness Gardlin concerning reports to Yamaha of injuries. The objection was made that incidents occurring at speeds in excess of 40 m.p.h. were not sufficiently similar to appellant's accident to be admissible. The following then transpired:

> "The Court: ... What is the materiality of any evidence on speeds or injuries that may have occurred over the range in which the plaintiff testified his motorcycle was going?
>
> Mr. Dante Mattioni [counsel for appellant]: Notice as it relates to the frame, Your Honor.

> \* \* \* \* \* \*

> The Court: I will sustain the objection and limit the inquiry into those accidents which may have occurred and as to matters which indicate some type of deficiency in the frame, causing wobble, weaving or otherwise, and for those speeds under 40 miles an hour. Mr. Allison [counsel for appellee]: May the jury be instructed that they are not to consider any of those that the evidence already shows for proof of anything already in evidence that occurred above 40 miles an hour with some-

thing wrong with the motorcycle, which I think is all of them.

The Court: I will allow those in to show some type of notice of a wobble, and I will overrule that objection as to those which are already admitted, but as to the injuries, I will sustain the objection."

It is appellant's contention here that the trial court should have admitted evidence of other wobble complaints regardless of speed, and that no instruction limiting the consideration of those in excess of 40 m.p.h. to the issue of notice should have been given.

We agree with appellant's position. In products liability cases, evidence of other accidents involving the same product is admissible to show its dangerous or hazardous nature if the accident occurred under the same or substantially similar conditions as that involving the plaintiff. *Magic Chef, Inc. v. Sibley*, 546 S.W.2d 851, 855 (Tex.Civ. App.—San Antonio 1977, writ ref'd n.r.e.). See Davis, *Evidence of Post-Accident Failures, Modifications and Design Changes in Products Liability Litigation,* 6 St. Mary's L.J. 792, 796 (1975). In discussing the holding in *Magic Chef,* the 5th Circuit Court of Appeals noted that: "The requisite degree of similarity is plainly not very high. . . ." *Mitchell v. Fruehauf Corp.,* 568 F.2d 1139, 1147 (5th Cir.1978). In addition to showing a dangerous or defective condition, evidence of similar accidents should also be admitted to show that the alleged injury was caused by that condition. *Ginnis v. Mapes Hotel Corp.,* 86 Nev. 408, 470 P.2d 135, 139 (1970). See also *Zenkel v. Oneida County Creameries Co.,* 104 Misc. 251, 171 N.Y.S. 676, 677 (1918), aff'd, 188 A.D. 905, 176 N.Y.S. 927 (1919).

However, we do not feel that appellant is now in a position to complain. Counsel's statement, in response to the trial court's query, that the evidence was admissible to show notice served as a limitation upon his offer. In specifying the purpose of proffered evidence, the burden is on the offerer to make the proper specific offer. See *Luvual v. Henke & Pillot, Division of Kroger Co.,* 366 S.W.2d 831, 839 (Tex.Civ.App.—Houston 1963, writ ref'd n.r.e.). Appellant is now bound by his offer. Even had the trial court allowed the admission of further evidence, it would have been subject to the same limiting instruction. The point is overruled.

In his eighth point of error, appellant complains of the action of the trial court in excluding from evidence that portion of the deposition of Leo Lake taken May 29, 1981. The deposition in question was filed with the Nueces County District Clerk on June 8, 1981, the date the trial commenced.

A review of the deposition in question shows that it was taken in the office of appellant's attorney in Philadelphia, Pennsylvania. Present during the deposition was counsel for appellant, counsel for defendant/appellee Yamaha Motor Corp. U.S.A., and counsel for defendants Heldenfels Brothers and Ferro Corporation. Near the end of the last day of the deposition, a dialogue arose between appellant's counsel and counsel for appellee Yamaha over appellee's counsel's right to cross-examine the witness. A synopsis of the conversation indicates that appellee's counsel terminated that day's examination at 5:00 p.m. after appellant's counsel requested he be allowed to finish his examination after 5:00 p.m. Appellee's counsel then asked to be allowed to cross-examine the witness on the following day (Saturday). Appellant's counsel refused to continue the deposition until the following Monday, citing prior commitments and previous custom of the parties. At the time, counsel for appellee Yamaha voiced an objection to the proceedings as a denial of his right to cross-examine the witness. The deposition does not contain any cross-examination of the witness by appellee Yamaha's counsel.

On June 9th, during the first day of testimony in the trial, appellant's attorney offered testimony from the June 27, 28 and 29 deposition of Leo Lake into evidence. Counsel for appellee Yamaha objected to the evidence and requested a hearing on the question of the admissibility of the deposition. Out of the presence of the jury, the

trial court conducted a hearing on the question of whether or not the deposition in question was admissible. The only argument presented by appellee Yamaha's attorney was that he was denied the right to cross-examine Mr. Lake during the taking of the deposition and, therefore, it was inadmissible. The trial court granted appellee's motion and refused to admit testimony from the last day of deposition into evidence.

Rule 211, Tex.R.Civ.P., states "[r]egardless of whether cross-questions have been propounded, either party has the right to use the deposition on the trial." We feel that this rule controls in this situation. Obviously, the appellee had the right and opportunity to cross-examine Mr. Lake at a subsequent deposition or as a witness during the trial. Regardless of this opportunity to cross-examine Mr. Lake, the rule makes the deposition admissible subject to the appropriate rules of evidence.

The only case cited by appellee in its arguments and authorities under this point of error is *Heldt Brothers Trucks v. Silva*, 464 S.W.2d 931 (Tex.Civ.App.—Corpus Christi 1971, no writ). In that case and in numerous other cases not cited by appellee's counsel, this Court has held that one who is not a party to a lawsuit will not be bound by the contents of a deposition taken prior to the time they became a party for the reason that they were denied the right of cross-examination. These holdings have no application to this fact situation. In this case, it is clear that appellee Yamaha was a party and was present at all times during which Mr. Lake's deposition was taken and, in fact, that Mr. Lake was a paid employee of appellee Yamaha and, as such, was subject to its control. That portion of the deposition excluded was admissible.

Again, however, we are not of the opinion that its exclusion constitutes reversible error. We have reviewed the deposition thoroughly. It consists, in large part, of bickering between two of the attorneys concerning discovery and production of evidence. In it are contained only two extremely brief statements concerning what can cause a motorcycle to wobble. As indicated earlier, it was favorable findings concerning causation that appellant failed to procure. We are not able to accept the proposition that the receipt of the excluded portion of Mr. Lake's deposition would have altered that result. The trial court's ruling did not cause the rendition of an improper verdict. Tex.R.Civ.P. 434. Point of error number eight is overruled.

In his next point of error, appellant contends that the trial court erred in excluding the testimony of his daughter concerning a conversation she had with him in the hospital a couple of days after the accident in which he told her that "the bike forced him off the road." In this regard, it is appellant's position that such was admissible to refute appellee's "direct, brutal accusation" of recent fabrication.

When a witness is charged at the trial with recent fabrication, his former consistent declarations are admissible to corroborate his testimony, provided such declarations were made at a time when he had no motive to misrepresent the fact stated by him. *Barmore v. Safety Casualty Co.*, 363 S.W.2d 355, 358 (Tex.Civ.App.—Beaumont 1963, writ ref'd n.r.e.). We have examined the entire record, including those portions referred to by appellant in support of this point, and find that the statements made and questions asked by counsel for appellee do not rise to the proportions of charges of recent fabrication. Point of error number nine is overruled.

Point of error number ten concerns the admission by the trial court of evidence concerning a separate law suit filed by appellant in 1972, before the accident here in question, for back injuries in which he had alleged that he had lost the joy of motorcycle riding. Admissions of a party are averments which are inconsistent with his testimony at trial tending to impeach his credibility. *Hartford Accident & Indemnity Co. v. McCardell*, 369 S.W.2d 331, 337 (Tex.1963). "An admission [against interest] ... 'may be defined as any statement made or act done by one of the parties to any action or on his behalf

which amounts to a prior acknowledgement by such party that one of the facts relevant to the issues is not as he now claims.'" Id.

The evidence here complained of was admitted after appellant had testified that, prior to the accident, he had been riding for therapy purposes for his back (although he had not been advised to do so by a physician), and that such was the "best therapy [he] had." The evidence was admissible for impeachment purposes, and no abuse of discretion is shown. The point is without merit and is overruled.

■ We are next faced with appellant's contention that during oral argument various references to the feasibility of testing the motorcycle involved in the accident caused reversible error. We first address appellee's references to appellant's failure to call certain expert witnesses and produce test results. It must be noted initially that witnesses for both sides testified that the most accurate way to determine if appellant's motorcycle had a propensity to wobble was to take it out and test-drive it.

We believe that appellee's argument was perfectly valid.

"Where a party fails to call witnesses who have knowledge of the facts and whose testimony is available to him, such failure creates a presumption that the testimony, if produced, would have been unfavorable to the party on the issue involved.... Moreover, where a party does not attempt to prove a particular fact by a certain person whom he could readily call for that purpose, there is a presumption that it could not be done."

1 Ray, *Texas Practice, Law of Evidence,* § 101, p. 159–61 (West 1980).

■ Appellant also complains of the statement made by counsel for appellee during closing argument that appellant, who had possession of the motorcycle, would not allow appellee the opportunity to conduct tests upon it. While appellee had made requests to examine the motorcycle, and had, in fact, had an expert look at it, no motion was made to allow a road test until several days into trial. The trial court took

the motion under advisement, but did not rule on it. Prior to final arguments, appellant secured a favorable ruling on his motion in limine prohibiting counsel for appellee from making the exact argument about which complaint is here lodged. When counsel got to that point in his argument, appellant objected that it violated the motion in limine, the objection was sustained, and the jury was instructed to disregard counsel's statement.

We assume that juries pay attention to instructions by the trial court and do not consider statements they have been ordered to disregard. *Coal Operators Casualty Co. v. Holloway,* 398 S.W.2d 421, 423 (Tex.Civ. App.—Beaumont 1965, writ ref'd n.r.e.). No error is shown, and point of error number eleven is overruled.

■ Appellant's twelfth point of error alleges cumulative error in what he terms "the repeated, prejudicial side-bar comments, personal and ethnic slurs, appeals to regional bias and prejudice, injection of 'evidence' not in the record" by counsel for appellee. Appellant refers us to numerous examples of the statements which he finds objectionable. These include the following:

"[S]o they have a frame that is too woppy...."

"Can that get loose and woppy?"

"The tolerances in the stem ... that might make it wobble or woppy...."

We cannot accept appellant's contention that these statements were meant to implicitly impugn the Italian ancestry of his lawyers.

"Now that might sell in Philadelphia. Do you think that's a good trick? Do you think that's a good Philadelphia trick ...?"

"I don't care where you're from or where you get your evidence from, I don't think you can come to Corpus Christi, whether you are a Philadelphia lawyer or who you are...."

We note in regard to this complaint, of appealing to regional bias and prejudice, that appellant's attorney stated at one point

that: "We lawyers, even from Philadelphia, call these products liability cases."

A very few of the other examples of which appellant now complains:

"I'm sorry. Mumble a little louder, okay?" (Made in reference to appellant's counsel's examination of a witness.)

"[I]n a voice that at least I could hear for the first time in three weeks...." (Referring to counsel's closing argument.)

"Your Honor, I can't hear him when he mumbles." (Made while examining a witness.)

"I think that everybody that testified lied for them...." (Made in closing argument.)

"You heard that goose from California, Nelson...." (Made in closing argument in reference to one of appellant's witnesses.)

"That's just somebody that happens to know and happens to do this sort of thing for a living, helping the State of Texas protect us from drunks." (Referring to Dr. Rupp's testimony.)

"But I've had a lot of cases on the other side where I've represented somebody that was hurt, and I don't know that you'd find another defense lawyer that was as upfront with you." (Appellee's counsel referring to himself in final argument.)

When alleging improper arguments by counsel, the complainant has the burden to prove (1) an error (2) that was not invited or provoked (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand from the judge. *Standard Fire Insurance Co. v. Reese,* 584 S.W.2d 835, 839 (Tex.1979). In order for improper argument to be deemed incurable, it must further be shown that, by its nature, degree and extent, it constituted reversibly harmful error. Id. "All of the evidence must be closely examined to determine ... the argument's probable effect on a material finding." Id. at 840. Compare *Texas Employers Insurance Ass'n v. Haywood,* 153 Tex. 242, 266 S.W.2d 856 (1954) (where unobjected to arguments concerning the credibility of witnesses because they were "a couple of those yellow nigs" was held to constitute uncurable, reversible error) with *Ramirez v. Acker,* 124 S.W.2d 905 (Tex.Civ. App.—Beaumont 1939), aff'd, 134 Tex. 647, 138 S.W.2d 1054 (1940) (where defense counsel argued that plaintiff's case "stinks," that plaintiff was a victim of a scheme or design by somebody to use him to their advantage, and that somebody ought to be indicted for filing and prosecuting the suit, and such was held not to constitute reversible error).

We have reviewed the entire record in this case, which constitutes 2,650 pages of statement of fact. We find but a handful of times where objections were raised by appellant at the proper junctures. Given the nature of the arguments complained of (i.e., curable by objection and instruction), we believe that error has, by and large, been waived. *Standard Fire Insurance Co. v. Reese,* 584 S.W.2d at 840–1. Moreover, having examined the entire record, the state of the evidence, the strength and weakness of the case, and the fact that the jury made several findings favorable to appellant, we are of the opinion that the jury carefully considered its verdict and the evidence and that the same result would have been reached without regard to the arguments which may not have been proper. Id. at 841. The point is overruled.

■■■■■ In point of error number thirteen, the complaint is made that the trial court erred in denying appellant's motion to strike Yamaha's pleadings because of its repeated abuses of discovery procedures or, alternatively, in failing to grant his motion for new trial or judgment n.o.v. for the same reason.

Preparation of this case was long and entailed exhaustive discovery. Numerous motions for sanctions for failure to make discovery were filed against Yamaha by appellant and other defendants, starting two years before the case came to trial. However, the imposition of penalties or

**714**

sanctions for such is a matter within the sound discretion of the trial court which will not be set aside absent a showing of abuse. *Bass v. Duffey,* 620 S.W.2d 847 at 849; *Lueg v. Tewell,* 572 S.W.2d 97 at 104.

A hearing must be held before Rule 170 sanctions may be imposed. *Smith v. Wilkins,* 577 S.W.2d 522, 524 (Tex.Civ.App.—Texarkana 1979, no writ); *Lueg v. Tewell,* 572 S.W.2d at 104. Appellant's motion came on to be heard in the trial court on June 8, 1981, one day before the actual trial commenced. At that time, the court indicated that appellant's motion would be carried "day to day" during the trial. No objection was made to this ruling by appellant, and no motion for continuance was urged. Approximately seven months after the trial, a hearing was held at which Yamaha was ordered to pay appellant's counsel $26,748.65 as sanctions for its failure to comply with discovery orders.

If appellant felt that he was ill-prepared to go forth with his case due to Yamaha's failure to comply with discovery orders, he should have urged a motion for continuance and a full-blown *pre-trial* hearing on his motion to strike Yamaha's pleadings. Announcing ready for trial and then re-urging his motions for judgment n.o.v. and for new trial was not the proper procedural tack in this instance. No abuse of discretion is shown, and the point is overruled.

Appellant's final point of error alleges that the trial court should have granted his motion for new trial based upon "newly discovered" evidence. Specifically, appellant refers to evidence of test results conducted by Yamaha which tended to show the effect of striations on the road surface upon the propensity of the TX 650 to wobble. The evidence was sealed by Yamaha during a pre-trial deposition, at which appellant's counsel was present and was not opened and examined by the court until a post-trial hearing.

The following are indispensable elements to the granting of a new trial upon newly discovered evidence in a civil case: (1) admissible, competent evidence must be introduced on the hearing of the motion for new

trial showing the existence of the newly discovered evidence relied upon; (2) the parties seeking a new trial must show that there was no notice of the existence of such evidence prior to the time of trial; (3) that due diligence had been used to procure the evidence prior to trial; (4) that the evidence is not merely cumulative to that already given and does not tend only to impeach the testimony of the adversary; and (5) the evidence would probably produce a different result if a new trial were granted. *Wilkins v. Royal Indemnity Co.,* 592 S.W.2d 64, 68–9 (Tex.Civ.App.—Tyler 1979, no writ); *In re Y,* 516 S.W.2d 199, 205–6 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). It is apparent that elements (2) and (3) have not been complied with in this case. Not only was appellant aware of the existence of the evidence prior to trial, but should have, in the exercise of due diligence, urged the court to examine it and rule on his motion for production at a pre-trial hearing. The point of error is overruled, and the judgment of the trial court is affirmed.